NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY RICARDO SMITH,<br><br>Petitioner,<br><br>v.<br><br>JOHN TSOUKARIS, et al.,<br><br>Defendants. | Civil Action No.: 11-4207 (JLL)<br><br><br>OPINION |

This matter comes before the Court by way of Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth below, the Court **dismisses** Petitioner's § 2241 petition **without prejudice** to the refiling of the same in accordance with the strictures of this Opinion and Order.

## I. BACKGROUND

On July 20, 2011, Petitioner, an alien detainee, filed a petition, seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 ("Original Petition"). [Docket Entry No. 1]. The Original Petition challenged the length of Petitioner's detention under Demore v. Kim, 538 U.S. 510 (2003), suggesting that Petitioner was a pre-removal-order detainee, held pursuant to 8 U.S.C. § 1226(c). [Id.]. When Petitioner first filed his Original Petition, governing law in this District would have found Petitioner's detention challenges as subject to dismissal under Demore v. Kim. See, e.g., Pierre v. Weber, 2010 U.S. Dist. LEXIS 32643 (D.N.J. Mar. 31, 2010) (reviewing case law and denying a substantively identical petition). However, taking notice of ongoing legal proceedings challenging the detention of alien detainees held pursuant to 8 U.S.C. § 1226(c)

before the United States Court of Appeals for the Third Circuit ("Court of Appeals"), this Court found it warranted to stay the instant action pending the Court of Appeals' resolution of said claims. See Docket Entry No. 2 (noting that the Court of Appeals was, at that juncture, examining analogous pre-removal-order challenges in Cheikh Diop v. US Immigration and Customs, Court of Appeals Index No. 10-1113, and related matters, see, e.g., Alli et al. v. Decker, Court of Appeals Index No. 10-2297).

On September 3, 2011, the Court of Appeals entered its ruling in Cheikh Diop v. US Immigration and Customs, Court of Appeals Index No. 10-1113. See Diop v. ICE/Homeland Sec., 656 F.3d 221 (3d Cir. 2011) (finding that, in certain circumstances, prolonged detention of pre-removal-order alien detainees, held pursuant to § 1226(c), may violate said detainee's due process rights if his or her detention is unaccompanied by a bond hearing). Following Diop, on October 5, 2011, this Court directed the Clerk to terminate its stay of this matter and ordered Petitioner to submit an amended petition stating his claims, if any, that might be viable under the new holding in Diop. [Docket Entry No. 3]. In response, Petitioner submitted the instant petition ("Amended Petition"). [Docket Entry No. 5].

The Amended Petition is primarily dedicated to discussions of law, and statements detailing the facts of Petitioner's case are scarce.[1] The following facts regarding Petitioner's detention can be surmised as follows: (a) Petitioner is a native and citizen of Jamaica; (b) after entering the United States in 1995, Petitioner--at a certain unspecified point in time--was convicted of conspiracy to distribute and distribution of heroin, and sentenced to a seven-year

---

[1] Since Petitioner's factual allegations made in his Amended Petition are very limited, the Court takes notice of the factual assertions made in Petitioner's Original Petition as filed on July 20, 2011 [Docket Entry No. 1].

2

term of imprisonment; (c) in 2009, upon his release from confinement associated with his criminal offense, Petitioner was taken into custody of the immigration authorities; (d) on March 23, 2011, Petitioner's trial-level immigration proceedings concluded and his Immigration Judge ordered Petitioner removed. (see generally, Pet. and Am. Pet.). As of October 19, 2011, Petitioner stated that he was a post-removal-order alien detainee held under a final order of removal, and that he had been cooperating with the United States immigration authorities in their efforts to remove him to his native Jamaica. (Pet., at 20-22). However, Petitioner asserted that there was no significant likelihood of his removal to his country of origin in the reasonably foreseeable future. Therefore, Petitioner claimed that his detention violated his constitutional rights under Zadvydas v. Davis, 533 U.S. 678 (2001). (Id., at 7-8, 16-22). Petitioner's Amended Petition alleges that the illegality of his confinement under Zadvydas can be presumed given his continued confinement subsequent to his order of removal on March 23, 2011 until the present, a period of over eight (8) months. (Id., at 20-21).

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241, writs of habeas corpus may be granted by the district courts, and shall not extend to a prisoner unless, inter alia, said prisoner is "in custody under or by color of the authority of the United States," or "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(a) and (c). In reviewing an immigrant detainee's detention challenge, a Court must first determine which governing legal regime applies to his circumstances based on the habeas petitioner's immigration status at the time of filing his petition pursuant to § 2241.

The Government has a 90-day "removal period" to remove an alien to his or her country

3

of origin. 8 U.S.C. § 1231(a)(1)(A). Detention during this 90-day removal period is mandatory for criminal aliens detained pursuant to 8 U.S.C. § 1226(c). After the 90-day "removal period" is complete, the Government may continue to detain inadmissible or criminal aliens pursuant 8 U.S.C. § 1231(a)(6). In such cases of continued detention, the Supreme Court has held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States," recognizing that some countries might never agree or be able to accept reentry for their citizens who await removal in the United States for an indefinite period of time.[2] Zadvydas, 533 U.S. at 689. "For the sake of uniform administration in the federal courts," the Supreme Court recognized a six-month period as a presumptively reasonable period of detention. Id., at 700-01. However, the Supreme Court held that,

> [a]fter this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.* To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id., at 701 (emphasis added).

This six-month "presumptively reasonable period of detention" begins to run anew every time the alien's order of removal becomes "administratively final." Specifically, a detainee's

---

[2] For instance, such a scenario might occur where the alien's country of origin has no repatriation treaty with the United States (e.g., as a result of deep and persistent political tension – or complete lack of diplomatic relations – with the United States, or because the country suffers a long-term internal political turmoil and thus lacks any cognizable governmental body with a mandate to issue a decision to accept alien detainees). The Supreme Court considered analogous scenarios in Zadvydas, where one of the petitioners in that case was a citizen of Cambodia (a country having no repatriation treaty with the United States) and another – being born to Lithuanian parents in a German displaced persons camp – already had been refused entry by both Germany and Lithuania.

4

"removal period" begins to run on the latest of: (1) the date when the order of removal issued by the detainee's Immigration Judge becomes administratively final (that is, appeal to the Board of Immigration Appeals ("BIA") was either taken and ruled upon (in the sense that the appeal was denied), or the time to file such appeal expired); (2) if the "removal order is judicially reviewed" by way of a petition for review and the court of appeals "orders a stay" of the removal, the date of the court's final order in those court proceedings; or (3) if the detainee is confined by reason other than his or her immigration process, the date when the detainee is released from confinement. See 8 U.S.C. § 1231(a)(1)(B).[3]

### III. DISCUSSION

In this matter, Petitioner's Amended Petition asserts that Petitioner's order of removal became "final" upon entry of the March 23, 2011 removal order issued by Petitioner's Immigration Judge directing Petitioner's removal. (Am. Pet., at 13). However, the order issued by Petitioner's Immigration Judge could not become "administratively final" on March 23, 2011, even if Petitioner elected not to appeal it to the BIA. As noted supra, an alien detainee's order of removal becomes administratively final either when the BIA denies the alien's appeal or upon expiration of the time to file such an appeal. See 8 U.S.C. § 1231(a)(1)(B). The time to appeal an Immigration Judge's removal decision to the BIA expires thirty days after the entry of the Immigration Judge's removal order. See 8 C.F.R. § 1003.38(b). Hence, an order of removal

---

[3] See Rodney v. Mukasey, 340 Fed. Appx. 761, 764-65 (3d Cir. 2009); see also Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000)("[there cannot] be only one removal period. . . . [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. . . . the [first] removal period beings when the removal order becomes final. If a court issues a stay, the removal period begins when the stay is lifted. . . . If there is another [triggering] event, there is another potential beginning date for the removal period."); Raia v. Aviles, 2011 U.S. Dist. LEXIS 74940, at *15-16 (D.N.J. July 6, 2011); Calderon v. Holder, 2010 U.S. Dist. LEXIS 90469, at *9-10 (D.N.J. Aug. 30, 2010); Lamas v. McKenzie, 2008 U.S. Dist. LEXIS 8647, at *30 (D.N.J. Feb. 6, 2008).

becomes "administratively final," for the purposes of the Zadvydas analysis thirty days after the entry of the Immigration Judge's removal order if no appeal is taken.

Here, if the Court were to presume that Petitioner did not appeal his order of removal to the BIA, Petitioner's March 23, 2011, order of removal became administratively final on April 22, 2011. Petitioner's Zadvydas-based period triggered by the administratively final order of removal thus began on April 22, 2011, and expired six months later on October 21, 2011, two days after Petitioner executed his October 19, 2011 Amended Petition currently before this Court. Accordingly, Petitioner's claims as stated in his Amended Petition are facially subject to dismissal since, at the time Petitioner executed said Amended Petition, he was still within the presumptively reasonable six-month period under Zadvydas, and his detention was facially proper. Moreover, the Court has no certainty as to whether Petitioner waived his opportunity to appeal his March 23, 2011 removal order to the BIA. Indeed, Petitioner's Original Petition, filed on July 20, 2011, around four months after the March 23, 2011 removal order, stated, "Petitioner's removal hearing is not pending due to an appeal to the BIA." (Pet., at 4). Petitioner's Amended Petition is silent as to Petitioner's BIA appeal, if any, leaving the Court uncertain as to whether such appeal was taken or ruled upon, and when such appellate ruling might have occurred. If Petitioner's BIA appeal is currently pending or has been finalized, the Court would be required to determine Petitioner's length of detention from the date upon which that appeal decision administratively finalized Petitioner's removal. In turn, Petitioner's Zadvydas-based period with regard to the so-finalized order of removal would expire only six months after such affirmance, and Petitioner's detention until that date could not be reviewed under Zadvydas as it was not the relevant detention period subject to examination based on an administratively final

removal order. Furthermore, if Petitioner in fact appealed his March 23, 2011 removal order, and the BIA reversed the decision of Petitioner's Immigration Judge, Petitioner's immigration proceedings may still be underway as a result of such development (or, alternatively, as a result of Petitioner obtaining a stay of removal from the Court of Appeals). If that has occurred, Petitioner is a pre-removal-order detainee whose confinement is governed by Diop and has no relevance to the regime set forth in Zadvydas.

Petitioner is the master of his claims. While this Court is mindful of Petitioner's pro se litigant status, this Court is not in the position to conjecture regarding the facts of Petitioner's claims, specifically, the current status and the past developments of Petitioner's immigration proceedings. "Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and set forth "facts supporting each of the grounds thus specified." See Rules Governing § 2254 cases, Rule 2(c), 28 U.S.C. § 2254 (amended Dec. 1, 2004) (applicable to § 2241 petitions through § 2254, Rule 1(b)). This Court, therefore, can only rule on the Amended Petition as pled. As detailed supra, the Amended Petition asserts facts indicating that Petitioner's detention was proper, under Zadvydas, at the time when the Amended Petition was executed, and the statement made in the Original Petition suggests that Petitioner's detention is likely to be proper, under Zadvydas, at the time when this Court is issuing the instant Memorandum Opinion and Order. However, the Court cannot rule out the possibility that: (a) Petitioner's appeal to the BIA yielded a reversal of the immigration judge's order (or Petitioner obtained a stay of removal from the Court of Appeals) and, thus, Petitioner might have valid pre-removal-order claims challenging his detention under Diop; or (b) Petitioner did not appeal his order of removal to the BIA (hence

making that order of removal final as of April 22, 2011, and triggering his Zadvydas-period as to the so-finalized order) and, as of now, Petitioner might be able to shift the burden to the government by asserting facts (*other* than the mere fact that he was not removed to his country of origin by October 21, 2011) showing that there is no significant likelihood of his removal to Jamaica in the reasonably foreseeable future.

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss the Amended Petition as drafted. However, the Court will direct the Clerk to open a new and separate habeas matter for Petitioner and will allow him an opportunity to file a new habeas petition (setting forth Petitioner's new facts, as they have developed since his filing of the Amended Petition and as they exist at the current juncture) in the event Petitioner believes, on the basis of the guidance provided to him herein, that Petitioner has a valid set of challenges to his detention.[4] An appropriate Order accompanies this Opinion

DATED: November 30, 2011

Jose L. Linares
United States District Judge

---

[4] In that respect, the Court stresses that Petitioner need *not* make legal arguments; however, in the event Petitioner elects to file a new petition, Petitioner *must* state, clearly and concisely: (a) whether he appealed his March 23, 2011, removal order to the BIA; (b) whether this appeal to the BIA is still pending or was already ruled upon and, if the latter, what ruling was entered by the BIA and when said ruling was entered; (c) whether Petitioner sought (and, if so, whether he obtained) a stay of removal from the Court of Appeals; and (d) what specific facts prompt Petitioner's bona fide belief that there is no significant likelihood of his removal to Jamaica in the reasonably foreseeable future.